# Akin *v.* Byrd, Appellant.

*Ejectment—Possession—Evidence.*

Where ejectment is sought to be maintained against an intruder, and the plaintiff relies upon possession alone, he must show an actual possession, evidenced by acts indicating permanency of occupation.

In an action of ejectment it appeared that neither plaintiff nor defendant had title to the land in dispute, which was a narrow strip lying between their respective properties. Plaintiff used the land during eight years for storing building materials in his business as a builder. At the expiration of that time he sold his land not including in the description in the deed the land in controversy nor reserving access to it. Plaintiff then moved from the neighborhood, leaving, however, on the disputed lot two or three spout stones and half a dozen pieces of terra-cotta pipe. Defendant then began to use the lot for storage purposes, and inclosed it with a fence. Plaintiff tore down the fence, and put up one of his own. Defendant tore this down, and resumed possession. *Held*, that plaintiff was not entitled to recover.

Argued Jan. 11, 1893. Appeal, No. 107, July T., 1892, by defendant, John Byrd, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1891, No. 100, on verdict for plaintiff, Joseph T. Akin. Before Paxson, C. J., Sterrett, Green, Williams, McCollum, Mitchell and Dean, JJ.

Ejectment for strip of land in Philadelphia.

The facts appear by the opinion of the Supreme Court.

Defendant's request for binding instructions was refused. [1]

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned*, inter alia, was (1) instruction, quoting it.

*Alex. Simpson, Jr.*, for appellant, cited, Kennedy v. Skeer, 3 Watts, 95; Easton Pass. Ry. v. Easton, 133 Pa. 505; Cooke v. Boynton, 135 Pa. 102; Lane v. Raynard, 2 S. & R. 65; Burke v. Hammond, 76 Pa. 172.

*J. Whitaker Thompson*, for appellee, cited, Woods v. Lane, 2 S. & R. 53; Shumway v. Phillips, 22 Pa. 151; Green v. Kellum, 23 Pa. 254; Fisher v. Phila., 75 Pa. 392; Bouvier's Law Dict., title, Ouster; Co. Lit. 199, b. 200; 3 Bl. Com. 167; Overfield v. Christie, 7 S. & R. 173; Moore v. Small, 9 Pa. 195; Meily v. Wood, 71 Pa. 488; Foster's Ap., 74 Pa. 391; Du Bree v. Albert, 100 Pa. 483.

OPINION BY MR. JUSTICE DEAN, February 6, 1893:

The plaintiff, Akin, brought ejectment in the court below against Byrd, defendant, for a small piece of land eleven by thirty-one feet eight inches, adjoining land fronting on Rosewood and Catharine streets in the city of Philadelphia; on its longest, or thirty-one feet eight inches lines, the plot was bounded on one side by lots in the possession of John D. Earnest, which afterwards came into possession of Akin, plaintiff; on the other, by lots at one time occupied by John A. Stevenson, and which afterward came into possession of Byrd; these two larger tracts of land were, therefore, separated at their eastern and western boundaries for thirty-one feet eight inches, by the narrow strip eleven feet wide, the land in dispute. Neither party at the trial claimed possession by conveyance in the line of title; the defendant Byrd offered in evidence a deed from Amanda Earnest, devisee of John D. Earnest, dated July 29, 1891, to himself, purporting to be a conveyance of the land in dispute; but it was admitted that the only claim Earnest had to the land was a possession originating in a trespass about eight years before. In fact, each party alleged the other was an intruder. Neither denied it. Akin, however, claimed that he had been in peaceable possession in August, 1891, when Byrd by force ejected him. If this claim was sustained by proper evidence, and the burden was altogether on Akin to prove it, as he offered not the shadow of title which drew to him the right of possession, then the judgment in his favor should be affirmed; otherwise, not.

Keeping out of view altogether Byrd's side of the case, let us state the facts not in dispute or as testified to by Akin.

Up to about the year 1883, the strip was part of an old roadway; John D. Earnest was the occupant of two lots adjoining it on the east; Akin formed then a partnership with Earnest in the bricklaying and building trade, and the partners used these lots so far as was necessary in conducting their business; the disputed piece was vacant, and Akin suggested to Earnest that it be taken possession of by them and used as a place of deposit for material necessary to their trade. This was done, and the lot was so used by them up until September 17, 1890, when the partnership was dissolved by the death of Earnest. Akin, the surviving partner, continued the busi-

ness, just how long does not appear, but for some time after, on the same premises. On the 27th of March, 1891, he took from the widow and son of his deceased partner a conveyance of the two lots, in the occupancy of Earnest, when the partnership was formed. The description in the deed excludes the disputed piece, and the boundary on that side is designated as land late of Nicodemus Lloyd and Josiah Randall. On the 5th of June, 1891, Akin conveyed the same two lots to Paul S. Reeves, still excluding the piece in dispute, and designating the land on that side as Lloyd and Randall.

On the delivery of this deed the grantee, Reeves, took possession, and Akin moved to Juniper street, nearly a mile distant. The conveyance to Reeves cut off all access to the disputed land, unless over the land of others. When Akin removed, he left upon the disputed lot two or three spout stones and half a dozen pieces of terra-cotta pipe. Byrd, who occupied the two lots on the opposite side of the narrow strip, then piled lumber upon it, deposited other building materials, and, so far as appears, did so without objection from Akin.

On the 30th day of July, nearly two months after he had first commenced using it, Byrd inclosed it with a fence; Akin tore down this fence on Saturday evening, and put up one of his own; Byrd tore this down on Sunday morning, and resumed possession; whereupon Akin brought this suit, alleging that while in the actual peaceable possession of the land Byrd ousted him by force.

We assume that, as the fruit of the trespass by Earnest & Akin in 1883, they enjoyed, as they had a right to, against all other intruders, the peaceable possession of the land until the death of Earnest in September, 1890, and that thereafter Akin, as survivor, had possession, possibly down to the date of his conveyance to Reeves on the 5th of June, 1891; but then, the evidence of abandonment, and intention to abandon the possession, is very significant; he stepped out, and Byrd stepped in. But assume this is not the fact, that there was no intention to abandon; then the intention not to abandon, but to continue possession under the circumstances here, should have been indicated by significant and unequivocal acts. The original trespass was the use of the lot for the deposit of building material by a firm of bricklayers and builders; the firm had dis-

solved; the business at that place ceased; the surviving partnei had sold 'out and moved away; by his conveyance of land between the disputed piece and the highway, access to it was cut off. True, according to his own statement, he left upon it two or three spout stones and half a dozen pieces of pipe, but this was not such possession as enables him to maintain eject-ment. Such a possession must have all the elements, except time, requisite to sustain a plea of the statute of limitations; it must be open, notorious, unequivocal, and hostile. It can scarcely be pretended, that if Akin had left the spout stones and pieces of pipe there for twenty-one years, he could have maintained a right to possession as against the real owner. If, with such a possession for twenty-one years he could not have withstood the rightful owner, he cannot eject another intruder upon one of like character, existing for less than two months.

The charge of the learned judge of the court below was al-together unexceptionable in its statement of the law, but we are clearly of the opinion the evidence was insufficient to es-tablish plaintiff's side of the issue. Therefore appellant's first assignment of error is sustained, and the judgment is reversed.